Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Ave
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>MALLAFUN AMUSEMENT CO., INC., a New Jersey Corporation,<br><br>&<br><br>OUTBACK STEAKHOUSE OF FLORIDA, LLC, a Florida Limited Liability Company,<br><br>&<br><br>BONEFISH GRILL, LLC, a Florida Limited Liability Company,<br><br>Defendants. | Case No. 1:26-cv-12235<br><br>**COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual, on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendants, MALLAFUN AMUSEMENT CO., INC., a New Jersey Corporation, OUTBACK STEAKHOUSE OF FLORIDA, LLC, a Florida Limited Liability Company, and BONEFISH GRILL, LLC, a Florida

Limited Liability Company ("Defendants") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

**The Parties**

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise sui juris. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, MALLAFUN AMUSEMENT CO., INC., owns a parcel of land which encompasses places of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

3. Defendant, OUTBACK STEAKHOUSE OF FLORIDA, LLC, operates a place of public accommodation, known as Outback Steakhouse ("Outback") alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

4. Defendant, BONEFISH GRILL, LLC, operates a place of public accommodation, known as BONEFISH GRILL ("Bonefish") alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

**Jurisdiction and Venue**

5. Defendants' properties/places of public accommodation – which encompasses both Outback and Bonefish – are respectively located at 1709 Deptford Center Road, Deptford, NJ 08096 (the "Property").

6. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

7. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original

jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

8. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

9. The Defendants own, lease, lease to, and/or operate a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendants are thus required to comply with the obligations of the ADA.[2]

10. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

**Factual Background**

11. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

12. Mr. Maurer is the president an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

13. Generally speaking, Mr. Maurer continues to encounter architectural barriers at many of

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

[3] as defined by 28 CFR § 36.105(b)(1-2)

the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous.

14. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

15. Mr. Maurer has visited the Property on several occasions over the years; with his last visit to occurring on or about July 25, 2026, when he in the area and stayed at nearby hotel. On this, and past occasions, Mr. Maurer has visited the Property as a bone fide patron with the intent to avail himself of the goods and services offered to the public within but found that the Property was rife with violations of the ADA – both in architecture and in policy.

16. Mr. Maurer enjoys stays in the greater Philadelphia area throughout the year for shopping, entertainment, and leisure purposes. In doing so he often stays at hotels with his family in surrounding locations for "staycations" – since it can be more difficult for him to travel great distances; thus, he regularly attends events in the Philadelphia area (especially Phillies and Sixers games).

17. Moreover, prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever

possible – as such he regularly travels across New Jersey, Pennsylvania, and New York.

18. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804
b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013
c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020
d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028
e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757
f. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073
g. Saratoga Racecourse, located at 267 Union Ave, Saratoga Springs, NY 12866

19. In sum, the Property is (1) a place he regularly visits with his family for shopping (2) just a few minutes from the Atlantic City Expressway and the bridges into Philadelphia, (3) in proximity to many places Mr. Maurer visits regularly and will continue to visit regularly, including hotels, (4) near several other properties inspected by Mr. Maurer for ADA compliance, and (5) on route from his home to Penn National Race Course, Harrah's Philadelphia Racetrack, and Parx Racing.

20. Mr. Maurer shall return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance – he sincerely hopes that his return visits are not made in vain.

21. Mr. Maurer has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Property.

22. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendants.

23. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in Paragraph 28 of this complaint.

24. Following any resolution of this matter Plaintiff will ensure that the Defendants undertake the remedial work that is required to cure existing violations, under the appropriate standard and in compliance with the ADA.

**COUNT I**
**Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

25. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

26. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[4]

27. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[5]

28. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on

[4] 42 U.S.C. § 12101(a)(1)

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

the basis of disability."[6]

29. The Defendants have discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

30. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 31 are both technically feasible and readily achievable.

31. The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**Outback**

**Parking and Exterior Accessible Route**

a. The designated accessible parking spaces located at Outback are not located on the closest most direct route to the front entrance, contain slopes beyond the allowable limits (2.0%), abrupt changes in level (including an access aisle which runs directly into the curb) and fails to provide a compliant accessible route from the parking area to the restaurant entrance; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have presented Mr. Maurer with a tipping hazard and could also cause damage to his wheelchair; these obstacles cannot be avoided since there is no other direct route into Outback.

b. The designated accessible parking area at Outback leads to an improper route which runs

[6] 42 U.S.C. § 12188(a)(1)

directly into an inaccessible curb, rendering one or two of the accessible parking spaces useless; a violation of the ADAAG and Sections 402, 406, 502 of the 2010 ADA Standards. When attempting to travel from the parking area to the entrance Mr. Maurer has been impeded by this lack of a curb ramp which has forced him to travel behind vehicles to reach an accessible route.

c. The exterior accessible route throughout the Property is impeded by cross-sloping beyond allowable limits (2%) and abrupt changes in level greater than ¼" inch; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Mr. Maurer has been impeded by the excessive sloping and abrupt changes of level – these conditions present a tipping hazard and could damage his wheelchair.

d. Outback provides four (4) designated accessible parking spaces but fails to provide the requisite number of **fully compliant** accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Mr. Maurer has been forced to park away from the facility so that he could freely access his vehicle.

e. The Property fails to provide a continuous accessible route which runs through the entirety of the Property and connects Outback to Bonefish. Mr. Maurer cannot safely travel from one restaurant to the other due to the lack of an accessible route; a violation of the ADAAG and Section 402 of the ADA Standards.

f. The Property fails to provide a compliant route to the adjacent street/sidewalk. Mr. Maurer has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits his options for transportation

and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Outback provides interior service elements which are mounted beyond the allowable maximum height (34” AFF); in violation of the ADAAG and Section 308 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these elements (countertops, work surfaces, etc.).

h. Outback fails to provide the requisite amount of accessible dining tables/accessible seating (5% of total seating) and does not provide a lowered portion at the bar (less than 34” AFF); a violation of the ADAAG and Section 902 of the 2010 ADA Standards. The lack of tables which allow for a forward approach prevents Mr. Maurer from dining comfortably in the dining room and the height of the bar prevents him from using it at all.

**Restrooms**

i. The restrooms within Outback are inaccessible to Mr. Maurer and contain architectural barriers to access including a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers have prevented Mr. Maurer from freely using the restrooms.

j. The dispensers (soap, paper towel, toilet tissue, seat cover, etc.) within the Outback restroom are improperly mounted outside of the prescribed reach ranges; a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Mr. Maurer is unable to make use of these dispensers due their improper location.

k. Lavatories within the Outback restroom lack the requisite knees clearance and accessibility; preventing Mr. Maurer from using the lavatories – violating the ADAAG and Section 606 of the 2010 ADA Standards.

l. The use of restroom door when exiting the restroom at Outback is impeded by a lack of latch-side maneuvering clearance; a violation of the ADAAG and Section 404 of the 2010 ADA Standards. Due the lack of wheelchair maneuvering clearance, Mr. Maurer cannot exit the restroom without assistance and will be become trapped inside if left alone.

m. The accessible water closet within the Outback restroom lacks properly mounted grab bars, contains a toilet with an improper centerline, and lacks a self-closing door; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to the foregoing barriers Mr. Maurer cannot make use of the water closet.

**Bonefish**

**Parking and Exterior Accessible Route**

n. The designated accessible parking spaces located at Bonefish contain slopes beyond the allowable limits (2.0%), abrupt changes in level (including an access aisle which runs directly into the curb) and fails to provide a compliant accessible route from the parking area to the restaurant entrance; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have presented Mr. Maurer with a tipping hazard and could also cause damage to his wheelchair; these obstacles cannot be avoided since there is no other direct route into Bonefish.

o. The designated accessible parking area at Bonefish fails to lead to a compliant accessible route; a violation of the ADAAG and Sections 402, 406, 502 of the 2010 ADA Standards. When attempting to travel from the parking area to the entrance Mr. Maurer has been impeded by abrupt changes of level and excessive sloping and cross-sloping which has endangered his safety and could cause a fall and/or damage to his wheelchair.

p. The exterior accessible route throughout Bonefish is impeded by cross-sloping beyond

allowable limits (2.0%) and abrupt changes in level greater than ¼" inch ; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Mr. Maurer has been impeded by the excessive sloping and abrupt changes of level – these conditions present a tipping hazard and could damage his wheelchair.

q. The designated accessible parking spaces adjacent to the exterior route at Bonefish lead to a curb ramp which lacks the requisite level landing area and is impeded by the presence of outdoor; a violation of the ADAAG and Section 403 of the 2010 ADA Standards. Due to this policy failure Mr. Maurer's travel along the exterior route to the entrance becomes frustrating and presents him with danger.

r. The ramp used to access Bonefish contains excessive sloping and cross-sloping; a violation of the ADAAG and Section 405 of the ADA Standards. This ramp present Mr. Maurer with a tipping hazard.

s. Bonefish provides four (4) designated accessible parking spaces but fails to provide the requisite number of **fully compliant** accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Mr. Maurer has been forced to park in non-compliant spaces or away from the facility as so that he could freely access his vehicle.

t. The Property fails to provide a continuous accessible route which runs through the entirety of the Property and connects Bonefish to Outback. Mr. Maurer cannot safely travel from one restaurant to the other due to the lack of an accessible route; a violation of the ADAAG and Section 402 of the ADA Standards.

u. The Property fails to provide a compliant route to the adjacent street/sidewalk. Mr. Maurer

has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits his options for transportation and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

v. Bonefish provides interior service elements which are mounted beyond the allowable maximum height (34" AFF); in violation of the ADAAG and Section 308 and 904 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these elements (countertops, work surfaces, etc.).

w. Bonefish fails to provide the requisite amount (5% of total seating in each area) of accessible dining tables/accessible seating; a violation of the ADAAG and Section 902 of the 2010 ADA Standards. The lack of tables which allow for a full forward approach prevents Mr. Maurer from dining comfortably with his family.

**Restrooms**

x. The restroom within Bonefish is inaccessible to Mr. Maurer and contains architectural barriers to access including a lack of wheelchair maneuvering space and accessibility; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers have prevented Mr. Maurer from freely using the restrooms.

y. The dispensers (soap, paper towel, toilet tissue, seat cover, etc.) within the Bonefish restroom are improperly mounted outside of the prescribed reach ranges; a violation of the ADAAG and Section 308 of the 2010 ADA Standards. Mr. Maurer is unable to make use of these dispensers due their improper location.

z. Lavatories within the Bonefish restroom lack the requisite knees clearance and accessibility; preventing Mr. Maurer from using the lavatories – violating the ADAAG

and Section 606 of the 2010 ADA Standards.

aa. The accessible water closet within the Bonefish restroom lacks properly mounted grab bars, contains a toilet with an improper centerline, does not contain a self-closing door, and lacks latch-side clearance to exit; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to the foregoing Mr. Maurer cannot make use of the water closet.

bb. The restroom door within Bonefish lacks the requisite latch-side clearance from the inside; a violation of the ADAAG and Section 404 of the ADA Standards. Due to the lack of available clearance Mr. Maurer cannot approach the door in his wheelchair, pull it open, and let himself out of the restroom which, when alone, could leave him trapped inside.

32. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D (“ADAAG”); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

33. The discriminatory violations described in Paragraph 31 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection conducted by the Plaintiff (and his expert) and include all those personally experienced by Mr. Maurer. Plaintiff requires thorough inspection of the Defendants’ place of public accommodation

[7] 28 CFR § 36.104

in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA/LAD.

34. Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[8]

35. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

36. Defendants have discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

37. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[9]

38. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such

[8] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them)

[9] 42 U.S.C. § 12181(b)(2)(A)(iv)

modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[10]

39. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[11]

40. Pursuant to 28 CFR § 36.304(a) the Defendants shall remove all architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

41. If the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[12] then the Defendants' facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

42. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[13] Discovery in this matter will reveal if and when such alterations have taken place at the Property,

[10] 42 U.S.C. § 12181(b)(2)(A)(ii)
[11] 42 U.S.C. § 12181(b)(2)(A)(iii)
[12] as defined by 28 CFR § 36.401(a)(2)
[13] 28 CFR § 36.402(a)(2)

and to what corresponding technical and scoping specification the Defendants must meet/exceed to bring the Property into compliance with the ADA.

43. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

44. Plaintiff is not required to notify the Defendants of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

45. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendants, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

46. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendants.

47. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendants cure all violations of the ADA.[14]

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendants are in violation of Title III of the ADA.
b. Injunctive relief against the Defendants including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendants to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.
c. An Order requiring the Defendants to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.
d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.
e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

[14] 42 U.S.C. § 12188(b)(2)

## COUNT II

**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 et seq.**

48. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

49. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

50. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[15]

51. As set forth above, the Defendants have violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

52. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained injury in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendants to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

[15] Pursuant to N.J.S.A 10:5-4

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendants to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 16th day of September 2026,

/s/ Jon G. Shadinger Jr.
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N. East Ave
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*